Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 68 | **DATE** | 12/3/2003 |
| **CASE TITLE** | United States of America vs. James Loehr | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Loehr's Motion to Suppress Recorded Conversations is granted in part and denied in part. Loehr's Motion to Dismiss is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 16 2004 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 26 |
| | Copy to judge/magistrate judge. | CLERK | | |
| | WAP | courtroom deputy's initials | 2004 MAR 16 AM 9:10 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES LOEHR,<br><br>Defendant. | Case No. 03 CR 68<br><br>Hon. Harry D. Leinenweber |

DOCKETED
MAR 16 2004

## MEMORANDUM OPINION AND ORDER

Defendant James Loehr (hereinafter, "Loehr") is charged with four counts of firearms-related charges. Count One alleges that Loehr possessed a firearm that was transported in interstate commerce and that its manufacturer's serial number had been removed or altered, in violation of 18 U.S.C. § 922(k) and § 922(a)(1)(B). Counts Two and Three allege that Loehr possessed a machine gun in violation of 18 U.S.C. § 922(o)(1) and § 924(a)(2). Count Four alleges that Loehr possessed eleven destructive devices not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). Loehr now comes before the Court with Motions to Suppress Certain Recorded Conversations and Dismiss Counts One, Two, and Three of the indictment.

### I. STATEMENT OF FACTS

Robert Perry (hereinafter, "Perry") was a Federally-licensed dealer, importer, and manufacturer of firearms through his wholly-

owned corporation, R. J. Perry & Assoc., Inc. ("R. J. Perry") Between the years 1988-1995 and 1997-2002, R. J. Perry also paid a special occupational tax allowing it (and Perry as its agent) to import firearms regulated by the National Firearms Act (the "NFA"), such as machine guns. However, the record is unclear whether R. J. Perry ever met the necessary, regulatory requirements to possess and sell NFA firearms legally, or whether such a license would extend to NFA firearms manufactured illegally.

Beginning in 1975, Perry had also periodically served as a government informant on several cases. In 1996, he began working with the FBI to investigate Loehr. On April 24, 1997, Perry signed a consent form permitting the Federal Government to place a listening device on his phone for purposes of recording an expected conversation with Loehr. Despite the fact that Perry's signed consent form pertained only to conversations taking place "on or about" April 24, 1997, the government continued to record conversations between Loehr and Perry after that date. During this time period, it is unclear whether the government's recording happened with or without Perry's knowledge and acquiescence.

On October 2, 1998, Perry signed another consent form, this time giving the government broad powers to record any of his conversations with anyone, including Loehr, on any phone from that date onward. On March 19, 1999, Perry consented to wearing a body recorder to record conversations not on the phone between himself

and Loehr. During this time period, Perry controlled the recording of conversations with Loehr. This led, unfortunately, to some conversations going unrecorded. Loehr argues that Perry decided not to record "exonerating evidence" showing that Perry entrapped him. The government disputes this, claiming that Perry only failed to record unexpected conversations – such as when Loehr visited his house without advance warning, denying Perry the opportunity to put on his recording device. Similarly, the government disputes that the unrecorded conversations contained exculpatory evidence.

The government alleges that, in the fall of 1998, Loehr requested that Perry and an undercover agent supply him with two AR-15 lower receivers, and the conversion kits necessary to transform them into fully automatic machine guns. The government alleges that, although it only gave Loehr the supplies required to perform two conversions, Loehr boasted to Perry that he was currently performing twelve – having acquired the rest of his parts elsewhere. On August 16, 1999, the government claims that Loehr returned one of the AR-15 lower receivers, modified to function as a fully automatic weapon, to Perry. The government further claims that Loehr had further altered the weapon by removing the receiver's original serial number.

## II. **MOTION TO SUPPRESS**

As part of its case against Loehr, the government seeks to enter recorded conversations between Loehr and Perry into evidence.

The government began recording Loehr and Perry's conversations on or about April 24, 1997 and continued recording them for approximately four years. Loehr seeks to suppress these conversations on two grounds. First, Loehr seeks to exclude all conversations between April 24, 1997 and October 2, 1998 on the grounds that the government lacked Perry's consent to record them. Second, Loehr desires to suppress all conversations on or after October 2, 1998, on the grounds that Perry selectively recorded these conversations, depriving Loehr of favorable evidence to support his defense.

With respect to the conversations between April 24, 1997 and October 2, 1998, Loehr makes a valid argument. Under 18 U.S.C. § 2511(2)(c), the government may conduct warrantless recordings of conversations between individuals and government informants only with the informant's consent. Although the government has the burden of proving an informer's consent, the consent does not need to be in writing. *United States v. Craig*, 573 F.2d 455,477 (7th Cir. 1977). Rather, "it will normally suffice for the Government to show that the informer went ahead with a call (or other recorded activity) knowing what the law enforcement officials were about." *United States v. Horton*, 601 F.2d 319, 322 (7th Cir. 1979).

Here, the government tries to establish consent entirely through two written consent forms signed by Perry. In the first one, Perry granted the government the specific right to record any

conversations with Loehr on a specific telephone "on or about" April 24, 1997. In the second one, Perry granted the government the broader right to record all conversations with Loehr or anyone else on any telephone he used from "on or about" October 2, 1998 into perpetuity. Conversely, Perry never gave written consent to record conversations taking place between April 24, 1997 and October 2, 1998, and the government has submitted nothing to establish such consent. Instead, the government instead simply expects the Court to take its word that Perry consented - stating without support that Perry "agreed" to the recordings.

Although the Seventh Circuit's bar for establishing consent is low, it is not nonexistent. Accordingly, the Court rules that the government has failed to establish consent for the recording of conversations between "on or about" April 24, 1997 and "on or about" October 2, 1998. Should the government come forth with evidence showing consent, be it from agents' affidavits or otherwise (Perry now being deceased and thus, unavailable for testimony on the matter), the Court will be happy to entertain a motion to reconsider the suppression of this evidence.

Loehr also challenges the admissibility of the post-October 2, 1998 recordings. Here, Loehr contends that the government empowered Perry to pick and choose which conversations to ignore. This, in Loher's view, violated his due process rights under the Fifth Amendment to the United States Constitution. However, the

Seventh Circuit does not recognize selective recording, by itself, as a due process violation. *United States v. Andreas*, 216 F.3d 645, 649 (7th Cir. 2000).

Loehr also seeks to suppress these later recordings on the grounds that this selective recording violates the Government's Guidelines in dealing with confidential informants. Yet Loehr cites no Guideline that prohibits selective recording.

Accordingly, the Court grants Loehr's motion to suppress as to all recordings taken between "on or about" April 24, 1997 and "on or about" October 2, 1998. The Court denies Loehr's motion to suppress as to recordings taken "on or about" April 24, 1997, "on or about" October 2, 1998, and following October 2, 1998.

### III. **MOTION TO DISMISS COUNTS 1-3 OF THE INDICTMENT**

A proper indictment serves three functions. It states all elements of the charged offense, informs defendants of the nature of the charge, and enables defendants to plead double jeopardy as a bar to repeated prosecution for the same offense. *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir. 1985). The indictment is not tested on the strengths or weaknesses of the government's case. It is examined solely for its sufficiency in charging the offense. *United States v. Risk*, 843 F. 2d 1059, 1061 (7th Cir. 1988).

Here, Loehr moves to dismiss Counts 1-3 of the indictment against him based upon three grounds. First, Loehr argues that he committed no criminal conduct because he served as an employee for

a licensed firearm manufacturer, giving him the right to possess machine guns, as well as possess guns with an obliterated serial number. Second, Loehr argues that the government entrapped him, because he lacked any predisposition to commit these crimes prior to being induced by Perry. Third, Loehr argues that Perry's behavior violated his 5th Amendment rights and the government's own guidelines, warranting dismissal of the charges.

Loehr first argues that he committed no criminal conduct because he functioned as a corporate employee of R. J. Perry. Loehr notes that R. J. Perry served as a federally licensed firearm dealer and manufacturer. Since companies can function solely through their agents and employees, Loehr contends that his "employment" with R. J. Perry granted him a legal right to possess machine guns. Loehr further contends that "it is the obligation of the license holder . . . to register the firearms and to identify the firearm by engraving or other means." Therefore, in Loehr's view, R. J. Perry also bears legal responsibility for Loehr's possession of a gun with an obliterated serial number.

Loehr's argument with respect to his possession of machine guns lacks substantiation. Although R. J. Perry apparently did possess a license to *import* NFA firearms (such as machine guns), the record is unclear as to whether R. J. Perry conformed with the regulations that would allow it to possess NFA firearms. Even if it had a license to possess NFA firearms, the record suggests that

such a right would be limited to the firearms R. J. Perry legally imported. Therefore, in order to invalidate the indictment, Loehr would need to show three things: (1) that R. J. Perry could legally possess NFA firearms; (2) that he legitimately served as an agent or employee of R. J. Perry; and (3) that the weapons mentioned in the indictment were legally imported by R. J. Perry, or otherwise permissible to be possessed by R. J. Perry.

Since Loehr has shown none of the above at this time, the Court must permit the indictments to stand. This is because the indictments properly allege criminal conduct, and in doing so meet all of the *Gironda* requirements.

Similarly, the Court also declines to dismiss Loehr's indictment on the grounds of entrapment. As the Supreme Court has ruled, "the question of entrapment is generally one for the jury, rather than for the court." *Mathews v. United States*, 485 U.S. 58 (1988). This is because entrapment defenses are often "intertwined with the issue of intent and . . . often based on credibility determinations, which are traditionally reserved for jury resolution." *United States v. Theodosopoulos*, 48 F.3d 1438, 1445 (7th Cir. 1995)(internal citations omitted).

Here, Loehr's entrapment defense consists of his own statements that unrecorded conversations between himself and Perry contained exonerating evidence, and a notation that he lacks a criminal history for weapons violations. However, just as the

Court could not take the government's "word" that Perry consented to the suppressed conversations, it similarly cannot take Loehr's "word" that the unrecorded conversations exonerated him as a matter of law. Likewise, the absence of a criminal history hardly precludes a rational fact finder from disagreeing with Loehr's contention that he lacked a predisposition to commit the alleged crimes. Such matters are the epitomes of the "credibility determinations" best reserved for the jury.

Lastly, the Court also denies Loehr's motion to dismiss on the grounds that Perry's selective recording constituted a due process violation, and a violation of the Federal Guidelines. Here, Loehr makes the same due process and Federal Guideline arguments he made in seeking to suppress the recorded conversations. For the same reasons as stated herein, the Court finds these arguments without merit.

### CONCLUSION

For the foregoing reasons, Loehr's Motion to Suppress Recorded Conversations is granted in part and denied in part. Loehr's Motion to Dismiss is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: November 3, 2003